UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENISE M. GALASSO, | ) |
|     Plaintiff, | ) CASE NO. C13-0699-MAT<br>)<br>) |
| v. | )<br>) ORDER RE: SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, | ) DISABILITY APPEAL<br>)<br>) |
|     Defendant. | ) |

Plaintiff Denise M. Galasso proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court REVERSES and REMANDS for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1972.[1]  She completed high school and two years of

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -1

college, and has worked as a property manager, homeless shelter coordinator, quality assurance technician, manufacturing laborer and machinist, and radio reporter.  (AR 198, 205.)

Plaintiff applied for DIB on June 17, 2009.  (AR 79.)  That application was denied initially and upon reconsideration, and Plaintiff timely requested a hearing. (AR at 80-82, 87-88, 90.)  On July 14, 2011, ALJ Laura Valente held a hearing, taking testimony from Plaintiff and a vocational expert.  (AR 28-77.)  On August 24, 2011, the ALJ issued a decision finding Plaintiff not disabled.  (AR 10-22.)  The Appeals Council denied review (AR 1-6), and Plaintiff appealed the Commissioner's decision to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had not engaged in substantial gainful activity since March 1, 2006, the original[2] alleged onset date.  (AR 12.)  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found that Plaintiff's fibromyalgia, anxiety, borderline personality

---

Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

2 Plaintiff amended her alleged onset date to June 4, 2008, at the hearing.  (AR 32.)

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -2

disorder, and depression were severe. (AR 12-13.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 13-14.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), such that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. All of her postural activities are limited to frequent, but she can occasionally climb ladders and crawl. She must avoid concentrated exposure to extreme cold and vibration. The ALJ also found that, mentally, Plaintiff can understand, remember, and carry out simple, routine instructions associated with unskilled work, and that she can understand, remember, and carry out more complex tasks but only for up to two-thirds of a workday. She can understand and carry out work tasks for two hours at a time, with usual and customary breaks, throughout an eight-hour workday. She can work superficially with the general public, and work in coordination with a small group of 1-3 co-workers. She can meet average production standards. (AR 14-20.)

With this assessment, the ALJ found Plaintiff able to perform her past relevant work as a warehouse worker. (AR 20.) She also found that, in the alternative, Plaintiff could perform the requirements of other representative occupations such as bottle packer, laundry folder, and motel cleaner. (AR 20-21.)

This Court's review of the ALJ's decision is limited to whether the decision is in

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -3

accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by (1) rejecting the opinions of treating physician Susana Escobar, M.D.; (2) rejecting the opinion of examining psychologist Phyllis Sanchez, Ph.D.; (3) discounting her credibility; (4) rejecting the statement provided by her mother, Linda Galasso; and (5) failing to discuss the observations of Social Security Administration staff.  The Commissioner argues that the ALJ's decision should be affirmed because it is supported by substantial evidence and free from legal error.

### Dr. Escobar's Opinions

Dr. Escobar wrote a letter in November 2010 opining that although Plaintiff's condition has improved, mental and physical limitations cause "persistent daily challenges" that require her to take care of herself to the exclusion of working.  (AR 464.)  She also completed a form opinion in June 2011, indicating that Plaintiff had a number of marked limitations as to sustained concentration and persistence, social interaction, and adaptation. (AR 626-29.)

The ALJ gave little weight to both opinions.  (AR 19-20.)  As to the November 2010 letter, the ALJ found it lacking corroboration via "objective information or other supporting

documentation," and also found it to be inconsistent with Plaintiff's daily activities and a consultative physical examination. (AR 19.) The ALJ likewise discounted the June 2011 opinion due to "lack of documentation or other objective testing," and inferred that Dr. Escobar's opinion was "exclusively based on the claimant's self-reporting while attempting to qualify for benefits." (AR 20.) Plaintiff argues that the ALJ's reasons for discounting Dr. Escobar's opinions were neither specific nor legitimate, and thus erroneous. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The Court agrees with Plaintiff that one of the ALJ's reasons is not specific. The ALJ indicated that she discounted Dr. Escobar's opinions on the grounds that Plaintiff's symptoms improved (AR 19), but did not cite any evidence to support that improvement. The record shows that Plaintiff's symptoms waxed and waned, with some short-term improvement amid periods of exacerbation. *See, e.g.*, AR 406-23, 492-93, 499, 502, 505, 511, 513. Dr. Escobar herself noted that Plaintiff's had "come a long way in terms of how she is handling her medical conditions," but nonetheless opined that Plaintiff could not work. (AR 464.) Thus, because it is not clear what "improvement" the ALJ was referring to, the Court cannot find that it would provide a basis for discounting Dr. Escobar's opinion.

But the ALJ's other reasons for discounting Dr. Escobar's opinions are sufficient. The ALJ indicated that Plaintiff's daily activities (summarized at AR 16-17), and specifically her ability to help her mother recover from surgery, are inconsistent with Dr. Escobar's opinions regarding Plaintiff's physical limitations caused by fibromyalgia. The ALJ noted that Plaintiff reported to providers that five times a week she was able to do yoga, walk, run, and/or go to the gym, and that she hiked five miles in August 2010. (AR 16 (citing AR 433,

517, 567, 616).)  Plaintiff further reported the ability to prepare meals and help her family with yardwork.  (AR 16 (citing AR 347).)  She also testified at the administrative hearing that she had recently enrolled in a new fitness gym, and that she had traveled by car to the Olympic peninsula and San Juan Island.  (AR 19 (referencing AR 45, 52).)  The ALJ reasonably construed this evidence of Plaintiff's abilities to participate in the activities as inconsistent with Dr. Escobar's opinion regarding her limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The ALJ's findings will be upheld 'if supported by inferences reasonably drawn from the record. . . .'" (quoting *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)).

The ALJ also discounted Dr. Escobar's opinions as unsupported.  (AR 19.)  Dr. Escobar's opinions contain many descriptions of Plaintiff's subjective symptoms, without accompanying clinical observations or independent notes.  *See, e.g.*, AR 628-29 (describing Plaintiff's various mental health symptoms, inability to perform simple activities, and inability to work while also taking care of herself).  Dr. Escobar's treatment notes (which predate her opinions) also fail to corroborate her opinions, because they indicate that Plaintiff's symptoms had started to improve.  (AR 405-37 (treatment notes from October 2009-February 2010).)  Because the ALJ properly discounted Plaintiff's credibility, as explained *infra*, the ALJ was entitled to discount Dr. Escobar's opinion to the extent that she relied on Plaintiff's description of her symptoms without supporting her opinion with her own clinical observations.  *See Ryan v. Comm'r of Social Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (finding that where a provider records a claimant's self-report *and supports his or her opinion with his or her own clinical observations*, then the credibility (or lack thereof)

of the claimant's self-report is not a clear and convincing reason to discount the provider's opinion).

Finally, the ALJ also reasonably construed Dr. Escobar's opinion regarding Plaintiff's limitations as to sitting, standing, and performing repetitive motions (AR 464) to be contradicted by the consultative physical exam that revealed no limitations as to sitting, standing, or walking (AR 346-50). (AR 19.) Plaintiff's argument (Dkt. 13 at 11) notwithstanding, the ALJ was entitled to rely on the contrary opinion of the consultative examiner in discounting Dr. Escobar's opinion, because the examining physician performed independent objective testing. *See, e.g. Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007). Accordingly, because the ALJ provided specific and legitimate reasons to discount Dr. Escobar's opinions, her assessment of those opinions is affirmed.

### Dr. Sanchez's Opinions

Dr. Sanchez completed a DSHS evaluation in August 2008, indicating that Plaintiff had several marked limitations as to cognitive abilities and severe limitations in social functioning as well. (AR 280-85.) The ALJ did "not assign much weight" to this evaluation because it was inconsistent with the longitudinal record, inconsistent with Dr. Sanchez's own mini-mental status examination results and addendum, and inconsistent with Plaintiff's daily activities. (AR 18-19.) Plaintiff argues that the ALJ erred in discounting Dr. Sanchez's opinion, because (1) she did not indicate which parts of the longitudinal record were inconsistent with Dr. Sanchez's opinion, (2) Dr. Sanchez's test results or opinions were not actually inconsistent with her opinions regarding Plaintiff's cognitive abilities, and (3) Plaintiff's ability to participate in limited activities does not contradict Dr. Sanchez's opinion.

The Court agrees with Plaintiff. The ALJ's first reason — inconsistency with the longitudinal record — is not sufficiently specific because the ALJ did not identify any portion of the record that contradicted Dr. Sanchez's opinion or otherwise specifically summarize any of the longitudinal record in her decision. The ALJ's third reason — inconsistency with Plaintiff's ability to attend church and interact appropriately with medical providers — is not legitimate, because Plaintiff did not actually retain the ability to attend church regularly (AR 64-65) and Dr. Sanchez herself noted that Plaintiff became angry and irritable with her during the examination (AR 282).

The ALJ's second reason is also problematic: Dr. Sanchez's mini-mental status examination results revealed a perfect score (AR 284) and her addendum indicates that Plaintiff's "attention/concentration/memory" were "pretty good" (AR 285), yet Dr. Sanchez opined that Plaintiff had "marked" limitations in her ability to perform routine tasks (AR 282). The basis for this opinion is not entirely clear, because Dr. Sanchez's test results revealed no impairment in cognitive functioning, yet she also indicated that Plaintiff's "[e]motional disturbance interferes with all aspects of work, interactions, activities[.]" (AR 282.) Because it appears that Dr. Sanchez's opinion regarding Plaintiff's cognitive functioning was informed by her opinions regarding "emotional disturbance" rather than any particular cognitive impairment, the ALJ's reference to the mini-mental status examination findings is inapposite.

On remand, the ALJ shall reconsider Dr. Sanchez's opinion and either credit it or provide specific and legitimate reasons to discount it.

/ / /

Credibility

The ALJ provided a number of reasons to discount the credibility of Plaintiff's subjective testimony, namely inconsistencies with the medical evidence, improvement with conservative treatment, evidence showing a secondary gain motivation, evidence showing that she had been dishonest in the past regarding her resume, work history indicating an ability to work despite the alleged limitations, inconsistent daily activities, and inconsistent statements regarding drug use. (AR 15-17.) Plaintiff contends that none of these reasons is clear and convincing (see *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)), but the Court disagrees.

The ALJ did provide certain legally sufficient reasons for finding Plaintiff not fully credible, citing medical evidence that Plaintiff's fibromyalgia and mental-health symptoms were not as limiting as alleged and improved with treatment, evidence that Plaintiff stopped working for reasons other than her impairments, and evidence of inconsistent statements regarding drug use. Furthermore, as explained *supra*, the ALJ cited numerous self-reported activities showing that Plaintiff's ability to function was less limited than alleged.

Regarding the medical evidence, the ALJ cited evidence showing that Plaintiff's fibromyalgia symptoms improved with medication, massage, and chiropractic treatments. (AR 15-16 (citing AR 289, 535).) The ALJ also cited Plaintiff's consultative physical examination, which revealed no physical impairments. (AR 15 (citing 346-50).) The ALJ further cited evidence that Plaintiff's mental health improved at times with medication and therapy. (AR 15 (citing AR 302, 413-14, 444, 465, 467, 492, 511, 584, 616).) Although a lack of corroborating medical evidence alone does not undermine the credibility of a

claimant's subjective symptoms, the ALJ did not err in considering the degree to which Plaintiff's allegations were supported by medical evidence. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

Furthermore, the ALJ cited evidence showing that one of Plaintiff's jobs ended after her employer believed that she had misrepresented her work history, rather than due to Plaintiff's limitations. (AR 16 (referencing AR 50-51).) Whether Plaintiff intentionally misrepresented her work history is irrelevant; that her job ended for a reason other than her impairments undermines the credibility of her allegations. *See, e.g.*, *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). The ALJ also inferred from Plaintiff's ability to work as an apartment manager for eight months thereafter, with duties that involved coordinating between a construction crew and tenants, that her social limitations were not as limiting as alleged. (AR 16 (referencing AR 46-49).) Although Plaintiff highlights the portion of her testimony where she claimed that this job involved "working alone" (AR 48), she also admitted that she was able to work as a liaison between the construction crew and the tenants, and participated in meetings with apartment management. (AR 49.) Thus, Plaintiff has not shown that the ALJ's interpretation of her job duties as apartment manager was unreasonable. The ALJ also noted that Plaintiff reported that she was looking for work in December 2008, after her amended alleged onset date, which further undermines her credibility. (AR 16 (citing AR 320).)

Regarding drug use, Plaintiff testified that she had used marijuana for fibromyalgia pain for three months during the time period that she was living with her mother, but stopped because she did not like it. (AR 56-57.) The record contains evidence showing that she used

marijuana for at least nine months, however, and that she continued using it for months after she moved out of her mother's home and found it to be helpful. (AR 392, 420, 422, 432-33, 517.) Inconsistent statements regarding drug use are a clear and convincing reason to discount a claimant's credibility. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir 1999).

The ALJ's other reasons regarding secondary gain and previous dishonesty were not legally sufficient, however. The ALJ cited evidence showing that Plaintiff lacked income, but no evidence to support her speculation that she "could be attempting to portray more extensive limitations than are actually present in order to increase the chance of obtaining benefits." (AR 16.) The ALJ also referred to evidence that Plaintiff had previously been terminated from a job after her employer discovered that some of the job history listed on her resume was not accurate. (AR 16.) Plaintiff explained this situation at the administrative hearing, and testified that she had accidentally listed the wrong year that she worked at a previous job. (AR 50.) This type of error is not a clear and convincing reason to discount Plaintiff's credibility, because there is no evidence in the record that Plaintiff intentionally falsified her resume. On remand, the ALJ shall reassess Plaintiff's credibility.

<u>Lay Witness Evidence</u>

The ALJ "strongly considered" a statement provided by Plaintiff's mother, but ultimately assigned "not much weight" to it because she described "primarily subjective" symptoms that were inconsistent with Plaintiff's activities, specifically her ability to adhere to an exercise routine and to create and maintain a blog. (AR 18.) The ALJ also indicated that her RFC assessment accounted for the limitations described by Plaintiff's mother, to the extent those limitations were supported by the record. (*Id*.)

Plaintiff argues that the ALJ erred in discounting her mother's statement without providing germane reasons. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996) (explaining that an ALJ must provide reasons germane to the lay witness if his or her statement is rejected). She described many subjective symptoms, such as Plaintiff's pain, fear, and exhaustion, which Plaintiff herself had also described. (AR 256-63.) Because the ALJ shall reassess Plaintiff's credibility on remand, she shall also reassess Plaintiff's mother's statement because it appears to rely on Plaintiff's subjective reporting of symptoms.

<u>Agency Observation</u>

Plaintiff notes that the record contains observations from Social Security Administration personnel (AR 190), and argues that the ALJ erred in failing to discuss those observations in her written decision. Dkt. 13 at 18 (citing Social Security Ruling 96-7p, 1996 WL 374186, at *8 (Jul. 2, 1996)). The Court disagrees because the witness's observations are not directly probative as to Plaintiff's functional impairments. (AR 190 ("[Plaintiff] answered questions in a low volume voice. [She] appeared [nervous] throughout interview. On occasions had to repeat question.").) These observations are not significant, probative evidence that must be explicitly discussed by an ALJ. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (holding that an ALJ "may not reject 'significant probative evidence' without explanation" (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984))). Accordingly, the ALJ did not err in failing to discuss the agency employee's observations.

## CONCLUSION

For the reasons set forth above, this matter is REVERSED and REMANDED for further proceedings.

01        DATED this 20th day of December, 2013.

02

03                                        /s/ Mary Alice Theiler
                                          Mary Alice Theiler
04                                        Chief United States Magistrate Judge

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -13